**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

GESNERSON LOUISIUS,

     Plaintiff,

v.                                Case No:  6:14-cv-931-Orl-40GJK

FLORIDA   DEPARTMENT   OF
CORRECTIONS, et al.,

     Defendants.

_____

<u>**ORDER**</u>

This cause comes before the Court on the following:

1. Defendants' Motion to Dismiss Plaintiff's Complaint, With Incorporated Memorandum of Law (Doc. 7), filed September 2, 2014;

2. Plaintiff's Opposition to Motion to Dismiss (Doc. 15), filed October 2, 2014;

3. Defendants' Motion to Strike Certain Allegations in the Plaintiff's Complaint, With Incorporated Memorandum of Law (Doc. 8), filed September 2, 2014; and

4. Plaintiff's Opposition to Motion to Strike (Doc. 13), filed October 2, 2014.

## I.   <u>BACKGROUND</u>

### A.   Facts[1]

This dispute arises out of inmate violence against Plaintiff, Gesnerson Louisius ("Louisius"), while he was incarcerated at Lancaster Correctional Institution ("Lancaster")

---

1. This account of the facts is taken from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true to the extent Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

in Florida.   On March 20, 2013, Louisius was sentenced as a youthful offender to two years of incarceration.  (Doc. 1, ¶ 12).   While at Lancaster, Louisius describes a "culture of gang violence, extortion, and bullying," including violence by inmates against other inmates who refused to surrender food on demand.  (*Id.* ¶¶ 15–16).   Louisius in particular became a victim of this extortion, being threatened by a particular inmate gang to either "feed or fight."  (*Id.* ¶ 17).   However, on May 5 and 6, 2013, Louisius refused a gang member's demands for his food.  (*Id.* ¶¶ 18–20).   Each time, the gang member physically attacked and injured Louisius.  (*Id.*).   On May 7, 2013, Louisius rebuffed a demand for food a third time.  (*Id.* ¶ 22).   The gang's response came later that afternoon.

In the early afternoon of May 7th, Defendant, Correctional Officer Dwayne Chauncey ("Officer Chauncey"), was the only guard supervising the inmates living in Louisius' dormitory.  (*Id.* ¶ 23).   The inmates in this area knew Officer Chauncey to frequently abandon his post to socialize with other female corrections officers.  (*Id.* ¶ 24).   When Officer Chauncey left his post on this day, the gang members seized the opportunity to retaliate against Louisius.  To prepare, one gang member obtained a broom and hid with it in an empty room of the dormitory known for its lack of security cameras.  (*Id.* ¶¶ 26–27).   While Officer Chauncey remained absent from his post, three other gang members cornered Louisius in another room and attacked him.  (*Id.* ¶¶ 30–32).   The gang members then led Louisius into the empty room where the fourth gang member waited with the broom.  (*Id.* ¶ 33).   One gang member suddenly struck Louisius in the head with a bar of soap stuffed inside a sock.  (*Id.* ¶ 35).   At that point, the other gang members joined in beating and kicking Louisius.  (*Id.* ¶ 36).

As the assault continued, one of the gang members grabbed the broom and inserted the handle into Louisius' anus.  (*Id.* ¶¶ 37–38).   Ultimately, the gang member

ruptured Louisius' rectum and shoved the broom handle approximately twelve inches into his body.  (*Id.* ¶¶ 38–39).  The attack continued for another several minutes.  (*Id.* ¶ 41).  After the attack, Louisius returned to his cell.  (*Id.* ¶ 43).

Officer Chauncey eventually returned to his post and assembled all of the inmates in the dormitory.  (*Id.* ¶ 45).  It was at this time Officer Chauncey realized that Louisius was in need of immediate medical attention.  (*Id.* ¶ 47).  Louisius was assisted to the Lancaster infirmary and later transported to Shands Hospital in Gainesville, where he was diagnosed with "traumatic rectal impalement."  (*Id.* ¶¶ 50–51).  The extent of Louisius' injuries required an emergency surgical colostomy along with other surgeries.  (*Id.* ¶ 54).

### B.   Procedural History

Louisius initiated this lawsuit on June 17, 2014 by filing the Complaint.  (Doc. 1).  Louisius names the Florida Department of Corrections ("FDOC"), Warden Shannon Varnes ("Warden Varnes"), Captain Paul Schauble ("Captain Schauble"), and Officer Chauncey as defendants.  Louisius states that he sues Officer Chauncey in his individual capacity, but does not identify the capacities in which he sues the remaining Defendants.  The Complaint alleges four claims against all Defendants.  Count 1 alleges a violation of Louisius' civil rights pursuant to 42 U.S.C. § 1983.  (*Id.* ¶¶ 65–81).  Count 2 alleges a claim for intentional infliction of emotional distress.  (*Id.* ¶¶ 82–88).  Count 3 alleges a claim for negligent security.  (*Id.* ¶¶ 89–107).  Count 4 alleges a claim for negligent entrustment and hiring.  (*Id.* ¶¶ 108–124).  Defendants now move to dismiss the Complaint based on sovereign immunity and for failing state claims upon which relief can be granted.  (Doc. 7).  Defendants also move to strike specified allegations made in the Complaint.  (Doc. 13).

## II.   DEFENDANTS' MOTION TO DISMISS

### A.   Standards of Review

A party's invocation of sovereign immunity attacks a district court's subject matter jurisdiction to consider the case at bar.  Challenges to subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Facial attacks only require the court to determine if the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id.* at 1529.  As such, the allegations within the complaint are assumed true for the purpose of the motion.  *Id.*  On the other hand, factual attacks challenge the existence of subject matter jurisdiction irrespective of what the complaint alleges.  *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997).  Accordingly, courts may consider information outside of the pleadings—including testimony, affidavits, and other evidence—and "may make factual findings necessary to resolve the motion."  *Hawthorne v. Baptist Hosp., Inc.*, No. 3:08cv154/MCR/MD, 2008 WL 5076991, at *2 (N.D. Fla. Nov. 24, 2008).

Motions pursuant to Federal Rule of Civil Procedure 12(b)(6) challenge whether the plaintiff has made sufficient factual allegations to state a claim upon which relief can be granted.  In order to survive a motion to dismiss made under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A claim is plausible on its face when the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions or recitation of the elements of a claim are not enough.  *Twombly*, 550 U.S. at 555.  District courts must accept all well-pleaded allegations within the

complaint as true. *Id.* Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

### B.      Analysis

Defendants move to dismiss Louisius' Complaint based on the sovereign immunity of the FDOC, Warden Varnes, and Captain Schauble and for Louisius' failure to state claims for relief.   Defendants' assertion of sovereign immunity under the Eleventh Amendment attacks the Court's subject matter jurisdiction.   Because a federal court must be satisfied that it has jurisdiction over a dispute before it may proceed to the merits, the Court must first resolve Defendants' invocation of sovereign immunity. *Seaborn v. State of Fla. Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998), *cert. denied* 525 U.S. 1144 (1999).

### 1.      Sovereign Immunity Under the Eleventh Amendment

The Eleventh Amendment deprives federal courts of subject matter jurisdiction to hear cases brought against a state by citizens of another state.  U.S. Const. Amend. XI. The United States Supreme Court has long construed the Eleventh Amendment's jurisdictional proscription to also bar lawsuits against a state by that state's own citizens. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).   When sovereign immunity is found to attach, the Eleventh Amendment deprives a federal court of jurisdiction to consider any lawsuit against the state "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Generally, sovereign immunity also extends to bar lawsuits against state officials when they are sued in their official capacity. *Regents of the Univ. of Cal. v. Doe*,

519 U.S. 425, 429 (1997); *see also Pellitteri v. Prine*, No. 13-14297, 2015 WL 151112, at *1 (11th Cir. Jan. 13, 2015).

However, the Eleventh Amendment is not absolute; a state may waive its sovereign immunity or Congress may abrogate the states' immunity. *Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). In either case, the state's waiver or Congress' abrogation must be unequivocal. *Halderman*, 465 U.S. at 99. Moreover, a state's waiver of sovereign immunity only in its own courts is not construed as a waiver of Eleventh Amendment immunity in the federal courts. *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981).

### a.    Individual Versus Official Capacity

Before applying the Eleventh Amendment to this case, the Court must determine the capacities in which Louisius sues both Warden Varnes and Captain Schauble. Defendants are right to point out the confusion that results when a plaintiff fails to identify the capacity in which he sues a state official. (Doc. 7, p. 8). "It is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity." *Hafer v. Melo*, 502 U.S. 21, 24 n.* (1991) (citation and internal quotation marks omitted). However, the United States Supreme Court has explained that a plaintiff's identification of a defendant's capacity—or lack thereof—does not necessarily control and that courts should defer to "[t]he course of proceedings" in determining the nature of liability a plaintiff seeks to impose. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996) (advising courts to look to the substance of a plaintiff's claims, the relief sought, and "the essential nature" of the case when determining the capacity in which a state official is sued).

Defendants urge the Court to interpret the Complaint as suing Warden Varnes and Captain Schauble in their official capacities only. (Doc. 7, p. 8). Defendants' logic is that since Louisius specifically names Officer Chauncey in his individual capacity, but does not identify the capacity of any other party, Louisius must intend to sue Warden Varnes and Captain Chauncey in their official capacities. (*Id.*).

However, the essential nature of Louisius' Complaint illuminates otherwise. Louisius alleges that Warden Varnes and Captain Schauble had a tendency of deliberately ignoring the safety of inmates at Lancaster. (Doc. 1, ¶ 59). If true, the Court may assume that Warden Varnes and Captain Schauble adopted this tendency in their individual capacities, as every officer working in any correctional facility is charged with the duty to reasonably ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Moreover, Louisius requests relief under § 1983 in the form of money damages (*id.* ¶ 81), which would not be available if Louisius intended to sue Warden Varnes and Captain Schauble in their official capacities only. *See Regents of the Univ. of Cal.*, 519 U.S. at 429. Louisius also alleges three state law tort claims against Warden Varnes and Captain Schauble, lending further support to the conclusion that he seeks monetary relief against these defendants in their individual capacities. For these reasons, the Court reads the Complaint to sue Warden Varnes and Captain Schauble in both their official and individual capacities.

**b.    Sovereign Immunity Attaches to the FDOC and to Warden Varnes and Captain Schauble in Their Official Capacities**

The Eleventh Amendment equally applies when a plaintiff sues an agency of the state or an officer or official of the state named in his official capacity, as the state is ultimately responsible for any award of relief against these entities and individuals;

therefore, the state is "the real, substantial party in interest." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (internal quotation marks omitted); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Alyshah v. Georgia*, 230 F. App'x 949, 950 (11th Cir. 2007); *see also Pellitteri v. Prine*, No. 13-14297, 2015 WL 151112, at *1 (11th Cir. Jan. 13, 2015).

The general rule is that sovereign immunity acts to bar a lawsuit against state entities and officials "regardless of the nature of the relief sought." *Halderman*, 465 U.S. at 100. However, a federal court may retain jurisdiction over an action to the extent it requests prospective relief against a state official sued in his official capacity. *Ex parte Young*, 209 U.S. 123 (1908); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). In order to retain jurisdiction in this circumstance, the plaintiff must show "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted). The plaintiff must additionally name as a defendant the state official empowered with enforcing the disputed constitutional right or statutory provision in his official capacity. *See Grizzle*, 634 F.3d at 1319.

Here, Louisius' Complaint requests the Court to enjoin Warden Varnes and Captain Schauble from committing future constitutional violations and to require the FDOC to promulgate new policies and procedures on the supervision and training of correctional officers. (Doc. 1, p. 18; Doc. 15, p. 6 & n.12). To the extent Louisius pursues prospective relief against the FDOC, he has failed to name the official responsible for enforcing the constitutional rights at issue in this case—namely, the secretary of the FDOC. Moreover, assuming Louisius had named the secretary of the FDOC, he has failed to demonstrate an ongoing violation of federal law. *Verizon Md. Inc.*, 535 U.S. at 645. The events giving rise to Louisius' claims all occurred on May 7, 2013. Although

Louisius implies that a risk of dangerous conditions might remain (*see* Doc. 15, p. 6 n.12), he does not suggest that any unlawful conduct under § 1983 continues to occur today. Louisius' claims for relief are therefore more properly characterized as claims for monetary damages for the injuries he has suffered. Accordingly, the Eleventh Amendment bars Louisius' lawsuit against the FDOC both for monetary damages and prospective relief. For the same reasons, Warden Varnes and Captain Schauble are also immune in their official capacities. These Defendants will be dismissed without prejudice as to Count 1.

### c. Florida Has Not Waived Sovereign Immunity in Federal Court as to Louisius' State Law Claims

Counts 2, 3, and 4 of the Complaint allege tort claims arising under Florida common law. Although states enjoy sovereign immunity under the Eleventh Amendment, a state may act to waive that immunity. *Gamble*, 779 F.2d at 1511. Indeed, Louisius submits that the State of Florida has waived its sovereign immunity for state law tort claims pursuant to section 768.28, Florida Statutes. (*Id.* at p. 7 & n.13).

It is true that Florida has waived sovereign immunity as to itself and its agencies for certain tort actions. *See* Fla. Stat. § 768.28(1). However, it is well-settled that the explicit terms of the statute limit Florida's waiver of sovereign immunity only to lawsuits brought in its own courts. *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990); *Nias v. City of Fla. City*, No. 07-22727-CIV, 2008 WL 2332003, at *4 (S.D. Fla. June 4, 2008); *Henry-Evans ex rel. Henry v. Fla. Dep't of Corr.*, No. 6:06CV199ORL31DAB, 2006 WL 1517139, at *2 (M.D. Fla. May 24, 2006) ("The Eleventh Circuit has repeatedly indicated that Section 768.28 . . . does not waive Florida's Eleventh Amendment immunity from suit in federal court."). Because a federal court shall not infer the waiver of sovereign immunity

to suit in federal court from a state's waiver in its own courts, the FDOC, along with Warden Varnes and Captain Schauble in their official capacities, are immune from suit in this Court on Louisius' state tort claims. *Fla. Dep't of Health*, 450 U.S. at 150. Accordingly, these defendants will be dismissed without prejudice from Counts 2, 3, and 4 of the Complaint, as Louisius' remedies on those claims lie in state court. As a result, no further claims remain pending against the FDOC and the Court will terminate the FDOC from this action.

> **d.      Sovereign Immunity Does Not Protect Warden Varnes, Captain Schauble, or Officer Chauncey in Their Individual Capacities**

As a final matter, the Eleventh Amendment does not act to bar Louisius' § 1983 claim against Warden Varnes, Captain Schauble, or Officer Chauncey in their individual capacities. *Hafer*, 502 U.S. at 25, 30–31. As discussed further in Section II.B.1.a, *supra*, the essential nature of the Complaint and these proceedings leads the Court to conclude that Louisius intends to sue Warden Varnes and Captain Schauble in both their official and individual capacities. The Court therefore has subject matter jurisdiction over Count 1 to the extent it alleges a claim against Warden Varnes and Captain Schauble in their individual capacities.

> **2.      Louisius' Claims for Relief**

Being satisfied that the Court has subject matter jurisdiction over this dispute as described above, the Court proceeds to examine Defendants' arguments as to whether Louisius states claims under § 1983 and under Florida law against Warden Varnes, Captain Schauble, and Officer Chauncey in their individual capacities. (Doc. 7, pp. 12–23). The Court discusses each count in turn.

### a.    Stating a Claim Under Section 1983

In order to state a § 1983 claim, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law."  *Woods v. Miller*, 215 F. App'x 796, 797 (11th Cir. 2007) (internal quotation marks omitted).   In the context of inmate violence, § 1983 claims arise under the Eighth Amendment's prohibition against cruel and unusual punishment.   Prison officials may be held responsible for depriving an inmate of his rights under the Eighth Amendment where two requirements are met.  First, "the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   Second, the prison official must have acted with "'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson*, 501 U.S. at 302–03).   A prison official acts with "deliberate indifference" when he fails to act "despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.   A plaintiff may show knowledge of a substantial risk of serious harm by establishing that the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" or by demonstrating that the risk was obvious.  *Id.* (internal quotation marks omitted).

According to Louisius, Officer Chauncey frequently abandoned his post in order to socialize with female corrections officers in other parts of Lancaster. (Doc. 1, ¶¶ 23–24). During Officer Chauncey's absence, the inmates in Louisius' dormitory remained unsupervised for extended periods of time.  (*Id.* ¶¶ 24–25, 32).   As a corrections officer, Officer Chauncey's long-term absences from his post without ensuring the presence of another guard to oversee inmates, if true, is nothing less than deliberate indifference to inmate health and safety.  Moreover, should the events described by the Complaint prove to be true, the deprivation of rights suffered by Louisius is undoubtedly sufficiently serious.

As such, Louisius has alleged a prima facie § 1983 claim against Officer Chauncey in his individual capacity.

Generally, however, supervisory officials such as Warden Varnes and Captain Schauble "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)) (internal quotation marks omitted). Nevertheless, liability may be imposed upon a supervisor where the supervisor either directly participated in the constitutional violation or where "a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* A plaintiff may show such a causal connection where there is a "history of widespread abuse" which places the supervisor on notice or when the supervisor knows of his subordinate's unlawful conduct and fails to take corrective action. *Id.*

Here, Louisius alleges a plausible § 1983 claim against Warden Varnes and Captain Schauble as supervisors. Louisius alleges that Warden Varnes and Captain Schauble knew that Officer Chauncey habitually abandoned his post to fraternize with female corrections officers and left the inmates in Louisius' dormitory unsupervised, but did nothing to correct Officer Chauncey's misconduct. (Doc. 1, ¶ 59(a)). Louisius additionally offers sufficient factual material for the Court to reasonably infer a history of widespread abuse at Lancaster. For example, Louisius states that inmate gangs regularly used brooms to anally impale those who would not surrender their food and that these attacks were frequent enough to be known by the prison population and Lancaster guards as "tests of ass." (*Id.* ¶¶ 61–62). Although Louisius only identifies one of these prior incidents with particularity (*id.* ¶ 62), he has alleged that other victims of attacks similar to

the one he suffered exist.  For these reasons, Louisius' Complaint also states a § 1983 claim against Warden Varnes and Captain Schauble in their individual capacities.

### b.   Louisius' State Law Claims[2]

#### (i)   Count 2: Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must establish four elements: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was outrageous, (3) the defendant's conduct caused emotional distress to the plaintiff, and (4) the plaintiff's emotional distress was severe.  *Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. Dist. Ct. App. 2009).  Defendants challenge the first and second elements of Louisius' IIED claim.  (Doc. 7, pp. 18–19).

Florida follows the Restatement (Second) of Torts in defining IIED.  *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).  According to the Restatement, a person acts intentionally when he "desires to inflict severe emotional distress." Restatement (Second) of Torts § 46 cmt. i.  A defendant acts recklessly "if he does an act or intentionally fails to do an act which it is his duty to the other to do" and such act or omission creates a risk of physical harm that is "substantially greater than that which is necessary to make his conduct negligent."  *Id.* § 500; *see also E. Airlines, Inc. v. King*, 557 So. 2d 574, 576 (Fla. 1990).  The distinguishing characteristic of intentional conduct is that the actor specifically desires to harm the plaintiff; in contrast, reckless conduct requires no such desire.  Restatement (Second) of Torts § 500 cmt. f.

---

2.  Having found that Louisius has stated a plausible § 1983 claim, Defendants' request for the Court to decline supplemental jurisdiction (Doc. 7, p. 17) is denied.  The Court has supplemental jurisdiction over Louisius' state law claims pursuant to 28 U.S.C. § 1367(a).

The facts alleged in the Complaint do not raise the reasonable inference that any of the Defendants acted intentionally—*i.e.*, with the desire to inflict harm on Louisius. However, Louisius does allege sufficiently reckless conduct as to Warden Varnes, Captain Schauble, and Officer Chauncey.   Louisius alleges that Officer Chauncey frequently abandoned his position as the sole prison guard assigned to Louisius' dormitory, leaving inmates unsupervised for long periods of time.  (Doc. 1, ¶¶ 23–24). Being the sole prison guard assigned to this area of Lancaster, the Court can reasonably infer that such conduct created a risk of physical harm substantially greater than mere negligence.

Further, Louisius states that Warden Varnes and Captain Schauble knew of the gang violence in Lancaster and knew of the particular use of brooms in furtherance of that violence.  (*Id.* ¶¶ 15, 59–62).  Warden Varnes and Captain Schauble also knew of Officer Chauncey's habit of abandoning his post and failing to ensure proper supervision of the inmates in Louisius' dormitory.  (*Id.* ¶ 59).  Despite their knowledge of these facts, Warden Varnes and Captain Schauble failed to prevent the formation of prison gangs, failed to secure brooms, failed to ensure proper supervision of all inmates, and failed to correct Officer Chauncey's well-known misconduct.  (*Id.*).  Taken as a whole, and in light of their ranks within the prison command, the Court can reasonably infer that Warden Varnes' and Captain Schauble's created a risk of harm substantially greater than mere negligence.

Moreover, Defendants' conduct was sufficiently outrageous. To establish the outrageousness element of an IIED claim, a plaintiff must show that the defendant's conduct "is so extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized community."  *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla.

Dist. Ct. App. 1998) (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted).  It is insufficient to show tortious or criminal intent and "[i]t is not enough [to show] that the defendant intended to inflict emotional distress." *King*, 557 So. 2d at 576; *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212–13 (Fla. Dist. Ct. App. 1995).  Instead, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Clemente*, 707 So. 2d at 867 (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted).

Here, Officer Chauncey abandoned his post as the sole guard of Louisius' dormitory to socialize with female guards in another part of Lancaster, leaving inmates without any supervision.  (Doc. 1, ¶¶ 23–24).  Worse, Officer Chauncey abandoned his post despite his knowledge of the gang violence that occurred throughout the prison and without securing items known by Lancaster guards to be used during inmate attacks.  (*Id.* ¶¶ 61–62).  A prison guard who deserts his post despite his knowledge of these particular facts has acted in a sufficiently outrageous manner.  Likewise, Warden Varnes and Captain Schauble, who knew of Officer Chauncey's misconduct and knew of the history of gang violence in Lancaster and the particular use of brooms in furtherance of that violence, also acted in a sufficiently outrageous manner by failing to correct those deficiencies in prison security.  (*Id.* ¶¶ 15, 59–62).  Louisius has therefore alleged a viable claim for IIED against Warden Varnes, Captain Schauble, and Officer Chauncey in their individual capacities.

### (ii)      Count 3: "Negligent Security"

Louisius labels Count 3 as a claim for "negligent security."  (*Id.* at p. 14).  However, negligent security necessarily involves some sort of owner/invitee relationship, such as

landlord/tenant, business/customer, or homeowner/guest.  Although Louisius describes himself as an "involuntary invitee" at Lancaster (*id.* ¶ 93), he has failed to provide any case where a court ventured to extend the concept of premises liability to a prison/prisoner relationship.  Without delving into the overwhelming public policy implications dissuading the Court from recognizing a cause of action in this context, Count 3 cannot state a claim for negligent security.

However, the Court is not bound by the mere labels a plaintiff gives to a claim for relief.  *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).  Based on the facts alleged in the Complaint, as illuminated by Louisius' response to Defendants' motion to dismiss, it appears that Count 3 is more properly construed as a pure negligence claim.  In order to state a claim for negligence, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty of care, (3) the plaintiff suffered damage, and (4) the defendant's breach was the actual and proximate cause of the plaintiff's damage.  *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007).

According to Louisius, Officer Chauncey frequently abandoned his post to socialize with female corrections officers in other parts of Lancaster, leaving the inmates in Louisius' dormitory completely unsupervised.  (Doc. 1, ¶¶ 23–24).  As a result of Officer Chauncey's desertion, an inmate gang attacked Louisius by beating him and impaling him with a broom.  (*Id.* ¶¶ 25–42).  Accepting these allegations as true, Officer Chauncey had a duty to maintain his post or to ensure the proper supervision of the inmates in his absence and that he breached this duty.  As Defendants admit, inmate violence is "unfortunately, foreseeable" in any prison.  (Doc. 7, p. 21).  Therefore, the injuries which Louisius suffered were the actual and proximate result of Officer Chauncey's actions.

Moreover, Warden Varnes and Captain Schauble, as Officer Chauncey's supervisors, owed a duty to correct Officer Chauncey's misconduct and to ensure the proper supervision of the inmates in Louisius' dormitory.  However, Warden Varnes and Captain Schauble knew of Officer Chauncey's misconduct, but failed to take corrective action and failed to ensure the supervision of the inmates in Officer Chauncey's absence, thus breaching their duty.  (Doc. 1, ¶ 59).  As a direct and proximate result, Louisius endured the attack described above.  Accordingly, Count 3 states a claim for negligence against Warden Varnes, Captain Schauble, and Officer Chauncey in their individual capacities.

### (iii)        Count 4: "Negligent Entrustment and Hiring"

Labeled as a claim for "negligent entrustment and hiring," Count 4 aims to combine two claims for relief into one count.  The essence of Count 4 is to impose liability on Defendants for negligently allowing inmates access to brooms during the course of their "employment" as inmate trustees.  (Doc. 1, ¶¶ 110–111, 116–121).  However, since inmates are, by statute, not employees within any meaning of the term, Fla. Stat. § 946.514(2), Count 4 cannot state a claim for negligent hiring.  But again, because the Court is not tied to the labels a plaintiff gives to his claims, *see Johnson*, 135 S. Ct. at 347, the Court more properly construes Count 4 as a claim for negligent entrustment only.

Florida applies the principles stated in the Restatement (Second) of Torts for claims of negligent entrustment.  *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1204–05 (Fla. 1997).  The Restatement provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should

expect to share in or be endangered by its use, is subject to
liability for physical harm resulting to them.

Restatement (Second) of Torts § 390.  The Restatement clarifies that liability should be

imposed on the supplier of an item "if the supplier knows or has reason to know that [the

recipient] is likely to use it dangerously."  *Id.* § 390 cmt. b.  Of particular significance in

this case, the Restatement explains that a supplier has reason to know that a person will

use an item dangerously if he knows of past incidents of dangerous conduct with the item.

*Id.*  As such, the Restatement focuses not on the objective nature of the item supplied,

but on the supplier's subjective knowledge regarding the item and its recipient.

Here, Louisius alleges that Warden Varnes, Captain Schauble, and Officer

Chauncey negligently entrusted brooms to inmates whom they knew or should have

known would use the brooms to attack other inmates.  Specifically, Warden Varnes,

Captain Schauble, and Officer Chauncey knew of previous occasions when gang

members used brooms to anally impale inmates who refused to surrender food.  (Doc. 1,

¶ 61).  Despite their knowledge of these incidents, Warden Varnes, Captain Schauble,

and Officer Chauncey continued to make brooms readily available to inmates without any

supervision over inmates using the brooms or security of brooms while they were not in

use.  (*Id.* ¶¶ 59(b)–(c), 62).  Due to the failure of Warden Varnes, Captain Schauble, and

Officer Chauncey to properly secure brooms which they should have expected to be used

in a dangerous manner, Louisius suffered physical harm.  Louisius has therefore stated

a claim for negligent entrustment.

### 3.  Defendants Challenge Louisius' Complaint as a "Shotgun Pleading"

As a final matter, the Court addresses Defendants' claim that Louisius' Complaint

constitutes a "shotgun pleading" that should be dismissed.  (Doc. 7, pp. 5–6).  A "shotgun"

pleading results when it is impossible for a defendant to know which factual allegations of the complaint are meant to support which claims for relief.  *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996).  For example, in *Anderson*, the plaintiff pleaded his complaint in such a manner as to re-incorporate all preceding paragraphs for each of six counts.  *Id.* at 365–66.  Consequently, the complaint re-alleged numerous irrelevant factual allegations that were not intended to support every count, resulting in a pleading that was impossible to defend against.  *Id.*

The Complaint here does not suffer from such a deficiency.  All of Louisius' allegations are pleaded in short, plain, and numbered statements as required by Federal Rules of Civil Procedure 8 and 10.  Further, the Complaint adequately gives the remaining Defendants fair notice of what Louisius claims as to each of them.  Therefore, the Court will not dismiss the Complaint as an improper "shotgun pleading."

## III.   DISCUSSION OF DEFENDANTS' MOTION TO STRIKE

### A.   Standard of Review

Federal Rule of Civil Procedure 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a party's pleading.  However, striking material is a "drastic remedy to be resorted to only when required for the purposes of justice."  *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2008 WL 4648999, at *14 (S.D. Fla. Oct. 20, 2008) (internal quotation marks omitted).  Ultimately, prejudice to the moving party is the cornerstone of Rule 12(f).  *See Embler v. Walker Elec. Sys. of Fla., Inc.*, No. 2:05-cv-256-FtM-33SPC, 2006 WL 1406366, at *1 (M.D. Fla. May 18, 2006).  As such, motions to strike are generally disfavored and should only be granted as a remedy for material that "ha[s] no possible relation to the controversy and may cause prejudice to one of the parties."  *Jackson*, 2008 WL 4648999, at *14.

### B.    Analysis

Defendants move to strike a part of the exordium to the Complaint which references Louisius' attempts to settle with Defendants prior to filing this lawsuit and Defendants' "refus[al] to offer even a nickel in response."  (Doc. 8, ¶ 4) (quoting Doc. 1, p. 1).  Louisius contends that these statements are meant to demonstrate compliance with the conditions precedent to his state law claims—specifically, compliance with Florida law requiring a claimant to give notice to a state agency of a potential tort claim. (Doc. 13, pp. 4–5).

However, Louisius ably demonstrates compliance with conditions precedent elsewhere in his Complaint without resorting to such inflammatory language.  (Doc. 1, ¶ 4).  Moreover, settlement negotiations between parties and refusals to pay demands are wholly irrelevant to issues of liability and are only intended to prejudice the opponent in the eyes of the trier of fact.  *Gruenthal v. Carlson Rests. Worldwide, Inc.*, No. 2:10-cv-421-FtM-29SPC, 2010 WL 5317337, at *4 (M.D. Fla. Dec. 21, 2010); *see also, e.g.*, *Anthony v. Mason Cnty.*, No.C13-5473 RBL, 2014 WL 1413421, at *5 (W.D. Wash. Apr. 11, 2014) (striking material from a complaint which revealed settlement negotiations). This portion of the Complaint will therefore be stricken.

Defendants also move to dismiss other statements Louisius makes in the Complaint as impertinent, immaterial, or scandalous.  The disputed allegations include:

1.  Defendants' statement that it intends to countersue Louisius to offset the costs of his incarceration from any recovery he may be awarded;

2.  References to injuries incurred by Louisius' family;

3.  Implications that state officials accepted bribes to tolerate allegedly unconstitutional conditions at Lancaster; and

4. Demands for punitive damages under federal and Florida law.

(Doc. 8, ¶¶ 5–9).  Regardless of whether these allegations may or may not be irrelevant, immaterial, or scandalous to these proceedings, Defendants have failed to adequately articulate the prejudice they suffer by their inclusion in the Complaint.  The Court similarly finds none.  Because prejudice is the cornerstone of Rule 12(f), *see Embler*, 2006 WL 1406366, at *1, Defendants' motion to strike will be denied in all other respects.

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion to Strike Certain Allegations in the Plaintiff's Complaint (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**:

1. Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Defendant Florida Department of Corrections is **DISMISSED WITHOUT PREJUDICE** from this action.

   b. Defendants Warden Shannon Varnes and Captain Paul Schauble are **DISMISSED WITHOUT PREJUDICE** from this action in their official capacities only.

   c. Defendants' motion to dismiss is otherwise **DENIED**.

2. Defendants' Motion to Strike Certain Allegations in the Plaintiff's Complaint (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. References in the Complaint to settlement demands or negotiations are **STRICKEN**.

b. Defendants' motion to strike is otherwise **DENIED**.

3. The Clerk of Court is **DIRECTED** to terminate Defendant Florida Department of Corrections.

4. The remaining Defendants shall answer the Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on February 17, 2015.


PAUL G. BYRON
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record